IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01881-REB-MJW

GREG SHRADER,

Plaintiff,

v.

DR. ALAN BIDDINGER,
EARIK BEANN,
WAVE 59 TECHNOLOGIES INT'L INC.,
WILLIAM BRADSTREET STEWART,
INSTITUTE OF COSMOLOGICAL ECONOMICS,
SACRED SCIENCE INSTITUTE, and
WAVE 59 TECHNOLOGIES INT'L INC. OWNER'S [sic] AND OFFICERS,

Defendants.

---

**RECOMMENDATION ON
DEFENDANT BIDDINGER'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM
AND FOR SANCTIONS AND ATTORNEYS' FEES
(Docket No. 7)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to this court pursuant to an Order of Reference to United States Magistrate Judge issued by District Judge Robert E. Blackburn on August 9, 2010 (Docket No. 2).

The pro se plaintiff commenced this action with the filing of his pleading entitled "Complaint for Civil Conspiracy, Libel, Publicity Placing a Person in False Light, and Intentional Infliction of Emotional Distress, Conspiracy Publicity Placing a Person in False Light, Conspiracy to Commit Libel, Conspiracy to Commit Publicity Placing a

2

Person in False Light, Conspiracy to Commit Intentional Infliction of Emotional Distress." (Docket No. 1). In that pleading, with respect to defendant Biddinger, plaintiff averments include the following. Plaintiff had a business relationship with defendant Stewart that allowed Stewart and his companies, Sacred Science Institute and the Institute of Cosmological Economics, to sell plaintiff's courses and books. In July 2009, plaintiff e-mailed Stewart, telling him to remove all of plaintiff's information, books, and courses from the websites of Stewart's companies. Stewart nevertheless continued to have a complete list of and information on plaintiff's books and materials for sale on his websites. Stewart then made threats about how he would destroy plaintiff and plaintiff's books and courses, using his friends in this endeavor. After this breakup, defendant Biddinger posted an e-mail from Stewart about the termination of his business relationship with plaintiff on defendant Wave 59 Technologies' website, which is at least partly owned by defendant Earik Beann. That posting on the Wave59 forum was in response to an inquiry from another forum member about plaintiff's work. Plaintiff commenced the same suit as the one before this court in the United States District Court for the Eastern District of Oklahoma on September 28, 2009. Even after sending out copies of the Complaint in that action to the defendants, defendants kept Biddinger's post on the Wave59 Technologies' website for months. Biddinger took no action to have the posting removed and instead hired two law firms. Defendant Beann wrote to several traders by personal e-mail and directed them to the posting. Stewart used his e-mail list from his companies to send out a bulk e-mail to his clients to send them a copy of the posting.

Now before the court for a report and recommendation is Defendant Biddinger's

3

Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim and for Sanctions and Attorney's Fees (Docket No. 7). The pro se plaintiff filed a response (Docket Nos. 10 and 29), and defendant Biddinger filed a reply (Docket No. 16). The court has considered these motion papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions, and recommendation that the motion be granted.

Defendant Biddinger seeks dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) because allegedly there is no personal jurisdiction over him and the Complaint fails to state a claim. Review of a motion to dismiss pursuant to Rule 12(b)(2) was recently summarized by Judge Krieger as follows:

> In reviewing a Motion to Dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. . . . Where a court chooses not to conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction by showing, through affidavits or otherwise, facts that, if true, would support jurisdiction over the defendant. . . . The allegations of a complaint must be taken as true unless contradicted by the defendant's affidavits, . . . and to the extent that the affidavits contradict allegations in the complaint or opposing affidavits, all disputes must be resolved in the plaintiff's favor and the plaintiff's *prima facie* showing is sufficient. . . .
>
> Colorado's long-arm statute provides that a non-resident party subjects itself to the jurisdiction of Colorado courts for claims arising from the party's "(a) transaction of any business within this state; [or] (b) the commission of a tortious act within this state." . . . The statute codifies the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and extends the courts' jurisdiction to the maximum extent consistent with the Due Process clause of the 14th Amendment. . . . Thus, the Court's analysis is limited to the question of whether the exercise of jurisdiction is consistent with the principles of due process. . .
>
> For purposes of personal jurisdiction, due process is satisfied when the defendant has sufficient "minimum contacts" with the forum state to

suffice such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." . . . The "minimum contacts" test examines whether the defendant has purposefully directed its activities at residents of the forum state, whether the claims asserted arise out of that purposeful direction of activity, and whether the assertion of jurisdiction under the circumstances is reasonable and fair. . . .

Iselo Holdings, LLC v. Coonan, 2010 WL 3630125, at *3-4 (D. Colo. Sept. 10, 2010) (quotations omitted).

Here, Biddinger notes in his motion to dismiss that the plaintiff filed this very same case in the United States District Court for the Eastern District of Oklahoma, and that court dismissed the action without prejudice for lack of *in personam* jurisdiction over Dr. Biddinger and the other defendants. The Tenth Circuit Court of Appeals, in a published opinion, recently affirmed the judgment of the Oklahoma District Court. Shrader v. Biddinger, — F.3d —, 2011 WL 678386 (10th Cir. Feb. 28, 2011). With respect to defendant Biddinger, the Tenth Circuit stated:

> **D. Defendant Biddinger - Specific Personal Jurisdiction for Posting the Allegedly Defamatory Email on the Wave59 Internet Forum**
>
> After receiving Mr. Stewart's email about the termination of his business relationship with Mr. Shrader, Mr. Biddinger posted the email on the Wave59 forum in response to an inquiry from another forum member about Mr. Shrader's work. There is no indication that this other member had any connection with Oklahoma. And, as already explained, the Wave59 site and its forum have no particular connection with Oklahoma. Finally, there is nothing about the content of Mr. Shrader's work, or his internet customer base, that has been shown to have any tie to Oklahoma. In sum, the only connection with Oklahoma shown on our record is that Mr. Shrader lives and produces his materials there.
>
> As noted earlier, merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed. This principle has particular salience for defamation cases: "Posting on the internet from [outside the forum state] an allegedly defamatory statement [about a forum resident] . . . does not create the type of substantial connection between [the poster] and [the

forum state] necessary to confer specific personal jurisdiction." *Johnson v. Arden*, 614 F.3d at 797. "[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Revell*, 317 F.3d at 473; *accord Young*, 315 F.3d at 262. Rather, defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message. *Johnson*, 614 F.3d at 796; *Revell*, 317 F.3d at 473; *Young*, 315 F.3d at 263. The thrust of this case law is consistent with this circuit's restrictive reading of *Calder*. "Some courts have held that the 'expressly aimed' portion of *Calder* is satisfied when the defendant individually targets a known forum resident. We have taken a somewhat more restrictive approach, holding that *the forum state itself must be the focal point of the tort*." *Dudnikov*, 514 F.3d at 1074 n.9 (emphasis added) (citation, alteration, and quotations omitted).

Oklahoma was not the focal point of the email posted by Mr. Biddinger, either in terms of its audience or its content. We have already seen that the forum where he posted the email targeted a trading community with no particular tie to Oklahoma. As for content, the email was about Mr. Shrader's work. That work was marketed and sold worldwide through the internet (there is no suggestion that Mr. Shrader had any local sales outlet) and there is nothing about the nature of the work inherently linking it to Oklahoma–as there might be had Mr. Shrader been located in a trading center like New York or Chicago and relied on that tie in producing or marketing his materials. He produced his materials in Oklahoma because he happened to live there; his professional reputation in the trading community was not tied to Oklahoma, as Ms. Jones's was to the California entertainment industry in *Calder*. To be sure, he suffered harm in Oklahoma in the sense that he incurred harm and resided in Oklahoma when he did so. But, as noted above, plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state.

It is instructive to compare the instant case with a recent unpublished decision in which this court found specific personal jurisdiction for defamation and related tort claims arising out of a derogatory blog posting that adversely affected the plaintiff's business in New Mexico. *See Silver v. Brown*, 382 F. App'x 723 (10th Cir. 2010). Differences in the two factual scenarios point up what is missing here. First, the blog on which the defendant in *Silver* posted the derogatory message was not a neutral forum already in place for other purposes, but was created by the defendant specifically to provide a launch pad for his attack on the plaintiff's business. *Id.* At 725-26, 729. Indeed, the names of the plaintiff and his business were incorporated in the blog's domain

> name, a fact this court found significant in light of the defendant's deliberate exploitation of search-engine technology to funnel searches regarding the plaintiff and his business to the blog, which warned them about the plaintiff and provided a link to "reputable" competitors. *Id.* At 725-26 & n.2, 730. Finally, unlike here, there was no indication that the plaintiff's business, raising capital for new ventures, was conducted through cyberspace with no particular tie to the forum state; on the contrary, "that state [was] unquestionably the center of his business activities." *Id.* at 730. The plaintiff "funded dinner meetings for eleven years, one evening a month at which New Mexico entrepreneurs pitched their deals to [prospective] investors," and "his work had helped create or save employment for more than 3,000 people in New Mexico." *Id.* (quotation omitted). In short, both the derogatory message and the blog it was posted on uniquely targeted a business centered in the forum state and were directed at an audience that would inherently have included a substantial number of forum state residents and businesses.
>
> Nothing like that is true of the forum and post at issue here. Given the geographically-neutral content of the message posted by Mr. Biddinger and the inquiry that prompted it (regarding the status of a business selling market-trading materials over the internet), the geographically-neutral nature of the forum where it was posted, and the lack of any facts developed by Mr. Shrader to suggest otherwise, there is no basis for concluding that Mr. Biddinger targeted his post at Oklahoma. On the contrary, every indication is that Mr. Biddinger targeted the post at a nation-wide or world-wide audience of market traders with no inherent interest in or tie to Oklahoma. That is an insufficient basis for exercising personal jurisdiction.

Shrader v. Biddinger, — F.3d —, 2011 WL 678386, at *6-8 (10th Cir. Feb. 28, 2011) (footnote omitted).

In the case at bar, defendant Biddinger asserts the following with respect to his argument regarding lack of personal jurisdiction. He is a practicing physician who lives and works in the State of Michigan. (Docket No. 7-1, Biddinger Decl. ¶¶ 1-2). Other than visiting Colorado twice, seven years ago for an orthopedic medicine review course and ten years ago for a ski trip, he has not physically entered the State of Colorado. (Biddinger Decl. ¶ 5). He has two friends in Denver with whom he has communicated

via e-mail intermittently concerning personal matters not related to this case. (Biddinger Decl. ¶ 5). He is aware that defendant Earik Beann, who is a participant on Wave59.com, resides in Colorado. (Biddinger Decl. ¶ 5). Biddinger does not own property or regularly conduct business in Colorado. (Biddinger Decl. ¶¶ 3-4). He is an active investor, and his interests include a study of various investment theories. As part of his interest, he participates in discussion forums of investors on a website known as Wave59, including a password-protected "chat room" or "discussion board." (Biddinger Decl. ¶ 7). He has purchased three or four books and DVDs from that website, has used traded software rented from Wave 59 Technologies International, Inc., through that website, and enrolled in a Wave 59 Power Users Conference sponsored by Wave59 Technologies International, Inc., in Las Vegas, Nevada, in 2009. (Biddinger Decl. ¶ 6). The Wave59 website, including the discussion board on which Biddinger posted the message that is in issue, is used by persons having interest in trading strategies based on analyses of market behavior.

Biddinger submitted the online posting in response to an online question from a member of the Trader59 online forum named Julia59 who had asked, "Has anyone got any experience of Greg's [plaintiff's] courses over at SS?" (Biddinger Decl. ¶ 8; Docket No. 7-3 at 2 - copy of posting). In responding to that posting, Biddinger copied and pasted a portion of an e-mail he received from defendant William Stewart. (Biddinger Decl. ¶ 8). That posting stated:

> Julia,
>
> This e-mail was sent by Brad Stewart at SS which summarizes the situation well:

> "There are some new developments which I must share with you regarding Greg Shrader and the Level 2 Andrews material. I will not be working with or publishing any of Greg's work anymore. We had a disagreement around the Level 2 Andrews course, which after about 6 months of my researching everything available on Andrews to write the course for him, and to introduce all of Andrews' techniques as the first part of the course, I discovered that most of what Greg clamed [sic] were his new ideas already existed in variations in other published material, leaving very little truly new and original content. For the $7500 price tag which he was insisting upon, I just didn't feel that his work justified the price, and I couldn't sell something to my customers that was not up to much higher standards. Many are already very knowledgeable about Andrews and keep asking me if I'm SURE there is anything new in there, and knowing that most of the ideas that comprise Greg's book can be found elsewhere at much more affordable prices, there is just no way, in good faith, that I could back this work. Needless to say, this really pissed Greg off, so we have decided to part ways and go in our own directions, and our partnership is now officially dissolved."
>
> Al

(Docket No. 7-3 at 2).

Biddinger's posting was made on a private, password-protected discussion board on Wave59.com. (Biddinger Decl. ¶ 8). According to Biddinger, the point of his posting was to explain and inform other members of Wave59 that plaintiff was no longer affiliated with William Stewart or Sacred Science ("SS"). (Biddinger Decl. ¶ 8). Biddinger claims he did not intend to damage plaintiff. (Biddinger Decl. ¶ 8). At the time of his posting, Biddinger did not know where Julia59 was located geographically, and he was not and is not aware of any connection between Julia59 and Colorado. (Biddinger Decl. ¶ 9). It was and is his understanding that Wave59 is an online forum with no geographic focus. (Biddinger Decl. ¶ 9). At the time of his posting, he knew that Wave Technologies International, Inc., was based in Colorado, but he was not aware of any user of Wave59.com discussion boards who was a resident of Colorado, other than

9

Earik Beann and his support staff. (Biddinger Decl. ¶ 10).

      Biddinger asserts that the plaintiff cannot prove either general or specific personal jurisdiction over him because he has not had the "continuous and systematic" contacts with Colorado necessary for general jurisdiction, and specific jurisdiction is also impossible because he did not purposefully direct his actions to have an impact in Colorado.

      In his response (Docket No. 10), plaintiff asserts that co-defendant Wave59 Technologies International, Inc., is a corporation based in Colorado, its officers and owners could live in Colorado, and co-defendant Earik Beann resides in Colorado. Therefore, plaintiff asserts that there can be no question that this court has original jurisdiction over the Colorado defendants, and as such this court would have diversity jurisdiction over the rest of the defendants, including Biddinger, under the federal diversity jurisdiction statute, 28 U.S.C. § 1332. He also notes that the matter in controversy caused damages in excess of $75,000. With regard to specific and personal jurisdiction over Biddinger, plaintiff responds:

> If those statements were all that Dr. Biddinger has done, as to being a member of a website and posting on the Wave59 web site and there was no more contacts then Counsel may be correct in his arguments. However, discovery would show that Dr. Biddinger used the Wave59 web site to help with the destroying of writer Dan Ferrera. As Dr. Biddinger knows that the Wave59 web site is a hub for traders from Colorado and all over the world. Dr. Biddinger can tell this Court that he doesn't understand that by posting defamatory messages on the Wave59 site, That Biddinger never intended for those defamatory messages to cause damage. Further, that Biddinger never understood that members of the Wave59 web site live in Colorado. And this Honorable Court may believe him. However, Dr. Biddinger goes to the Wave59 seminars. That are about every two years. And has co-defendant Earik Beann one of the owners of Wave59 for a friend, Mr. Beann not only is a owner of Wave59 that is located in Colorado, but also lives in Colorado. Some of the

> seminars for Wave59 are conducted in Colorado. Any reasonable person would believe that Dr. Biddinger knows several of the Wave59 subscribers live in Colorado, and that Dr. Biddinger purposely directed exhibit H at the Colorado hub to get the effect that he knew from past actions against other writers would have the greatest effect.
>
> . . .
>
> In this case at bar not only has defendant Biddinger been doing business over the years with Wave59, but defendant Biddinger has deliberately engaged in significant activities within the state of Colorado and answers emails and gives advice to traders in Colorado causing a "continuing obligations" effect. Further this Honorable Court should find that defendant Biddinger has purposely directed exhibit H at Colorado residents. To help support the argument that Exhibit H was directed at Colorado and the Wave59 site. Plaintiff shows the Court Exhibit Z-1 where Plaintiff is advising co-defendantStewart that Plaintiff has seen the Exhibit H post on the Wave59 Technologies Int'l Inc web site. . . . This supports that defendants Stewart and Dr. Biddinger had full intentions of directing their actions at a Colorado

(Docket No. 29 at 25-26, Docket No. 10 at 25). In addition, plaintiff asserts that this court also has supplemental jurisdiction over Biddinger under 28 U.S.C. § 1367.

In reply (Docket No. 16), Biddinger asserts that his participation in the Wave59 discussion is not related to his posting on August 11, 2009, to the Wave59 website, except that it involved the same media. He contends that "[p]articipation in such a discussion group, which is in no way focused upon person, institutions, or events in Colorado, is not the type of 'continuous and systematic' contact that meets the more demanding standard of general personal jurisdiction." (Docket No. 16 at 2). Furthermore, in response to plaintiff calling the website a "hub for traders from Colorado and all over the world," Biddinger asserts that in reality, the website "is a mere conduit for discussions among such traders; the fact that Internet access to the website is provided through a server located in Colorado is irrelevant." (Docket No. 16 at 3). Also,

11

while plaintiff asserts that "some" of the seminars sponsored by co-defendant Beann (owner of the Wave59 site) have occurred in Colorado, Biddinger has never traveled to Colorado for any such seminar or any other purpose associated with Wave59. (Docket No. 7-1, Biddinger Decl. ¶ 5),   In addition, in response to plaintiff's reference to some e-mails by Biddinger on the site regarding a Dan Ferrera, Biddinger correctly points out that there has been no showing Mr. Ferrera is connected to the state of Colorado or that the e-mails in question are related to the posting in issue in this case.

With regard to specific personal jurisdiction over Biddinger, Biddinger asserts that his post to the website, which is accessible on the Internet through a server located in Colorado, is not sufficient to establish specific jurisdiction, "where the posting is not directed at causing harm in Colorado or to any resident of Colorado, but concerns plaintiff and defendant Stewart, residents of Oklahoma and California, respectively." (Docket No. 16 at 3).  In response to plaintiff's claim that an e-mail of August 26, 2009, that he received from defendant Stewart is evidence that Biddinger's posting was aimed at producing effects in Colorado, Biddinger notes that in that e-mail, Stewart merely acknowledges authoring the e-mail in Biddinger's posting and indicates that in composing that communication, he kept it "very brief" and figured he would "just keep the details between you and me."  Biddinger asserts that the plaintiff has not indicated how Stewart's e-mail implicates Biddinger at all, let alone show that the posting was in some respect specifically directed to have effect in Colorado.  Biddinger further asserts that the content of the posting shows that it was directed to another user of the website (Julia59), whose location was unknown, and more broadly to a geographically-dispersed on-line forum.  Also, the content of the posting was not directed to anyone or any event

12

in Colorado. Biddinger also asserts that 28 U.S.C. § 1367 does not provide a basis for personal jurisdiction over him.

This court finds that just as in the Oklahoma case, plaintiff has failed to meet his burden of proving personal jurisdiction over defendant Biddinger in this district. As noted by the Tenth Circuit, Biddinger posted the e-mail on the Wave59 forum in response to an inquiry from another forum member about Mr. Shrader's work. There has been no indication that this other member had any connection with Colorado or that there was anything about the content of Mr. Shrader's work, or his internet customer base, that has any ties to Colorado. The only connection with Colorado that has been shown is that defendant Earik Beann lives in Colorado and Wave59 Technologies is a Colorado corporation.

As the Tenth Circuit noted, "defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message." Shrader v. Biddinger, — F.3d —, 2011 WL 678386, at *7 (10th Cir. Feb. 28, 2011). Colorado "was not the focal point of the email posted by Mr. Biddinger, either in terms of its audience or its content." Id. "[T]he forum where he posted the email targeted a trading community with no particular tie to [Colorado]. As for content, the email was about Mr. Shrader's work. That work was marketed and sold worldwide through the internet (there is no suggestion that Mr. Shrader had any local sales outlet) and there is nothing about the nature of the work inherently linking it to [Colorado] . . . ." Id. "Given the geographically-neutral content of the message posted by Mr. Biddinger and the inquiry that prompted it (regarding the status of a business selling market-trading materials over the internet), the

13

geographically-neutral nature of the forum where it was posted, and the lack of any facts developed by Mr. Shrader to suggest otherwise, there is no basis for concluding that Mr. Biddinger targeted his post" at Colorado. Id. at *8. "On the contrary, every indication is that Mr. Biddinger targeted the post at a nation-wide or world-wide audience of market traders with no inherent interest in or tie to [Colorado]. That is an insufficient basis for exercising personal jurisdiction." Id.

Based upon the findings above, this court recommends that all claims against defendant Biddinger be dismissed without prejudice. The court notes that in his response, plaintiff asks that this court move the case to the "proper jurisdiction" if it feels he has failed in his arguments on jurisdiction, noting his concern about possible time bars in other unspecified jurisdictions. Plaintiff does not specifically identify where the court should transfer the case. Furthermore, as also noted by Biddinger in his reply, under the laws of virtually all other states, the statutes of limitations do not bar the reasonably prompt refiling of a suit dismissed by another court on grounds unrelated to merits, including lack of jurisdiction.

In addition to seeking dismissal of the Complaint, Biddinger seeks an award of attorney fees and costs "for the plaintiff's vexatious act of bringing of this action for which there is clearly no *in personam* jurisdiction." (Docket No. 7 at 29). Under § 13-17-201, C.R.S., where any tort action is dismissed on motion of the defendant before trial under Rule 12(b) of the Colorado Rules of Civil Procedure, "such defendant shall have judgment for his reasonable attorney fees in defending the action." "The statute has been held equally applicable to a dismissal under Fed. R. Civ. P. 12(b) of a tort claim brought pursuant to Colorado law." Brammer-Hoelter

14

v. Twin Peaks Charter Academy, 81 F. Supp.2d 1090, 1102 (D. Colo. 2000). While "[b]y implication, § 13-17-201 [C.R.S.] allows a plaintiff to escape liability for attorney fees by filing a confession to a motion to dismiss under Rule 12(b) in such a manner that defendant is not required to expend additional efforts beyond the filing of its motion," id., plaintiff here did not file a confession of the motion to dismiss. It is thus recommended that pursuant to § 13-17-201, C.R.S., Biddinger be awarded his reasonable attorney fees and costs associated with defending this action. See id. (awarding reasonable attorney fees and costs following dismissal under Fed. R. Civ. P. 12(b)(1)).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant Biddinger's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim and for Sanctions and Attorney's Fees (Docket No. 7) be granted, that all claims against defendant Biddinger be dismissed without prejudice on the basis of lack of personal jurisdiction, and that defendant Biddinger be awarded his reasonable attorney fees and costs associated with defending this action.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file**

15

**and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  March 10, 2011  
       Denver, Colorado

s/ Michael J. Watanabe  
MICHAEL J. WATANABE  
United States Magistrate Judge